**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.  1:14-cv-02135-MSK-KLM

DAVID DURAN,

    Plaintiff,

v.

CHARLES SCHWAB & CO., INC.,

    Defendant.

---

**[PROPOSED] SCHEDULING ORDER**

---

**1. DATE OF CONFERENCE**
**AND APPEARANCES OF COUNSEL AND PRO SE PARTIES**

Pursuant to Fed. R. Civ. P. 16(b) a scheduling conference was held on October 23, 2014 at 10:30 a.m. before U.S. Magistrate Judge Kristen L. Mix.

Appearing on behalf or Plaintiff David Duran (hereinafter "Plaintiff Duran") was Mr. Ronnie Fischer of the Fischer Law Firm, P.C., 1777 South Harrison Street, Penthouse - Suite 1500, Denver, Colorado 80210, telephone (303) 756-2500.

Appearing on behalf of Defendant Charles Schwab & Co., Inc. (hereinafter "Defendant Schwab") was Mr. Roger Trim of Ogletree, Deakins, Nash, Smoak & Stewart, P.C., 1700 Lincoln Street, Suite 4650, Denver, Colorado 80203, telephone (303) 764-6800.

## 2. STATEMENT OF JURISDICTION

Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§1331, 1343 and 1367. This action arises under federal law, specifically the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq. The Court has supplemental jurisdiction over the Colorado Anti-Discrimination Act ("CADA") claims. Venue is proper in the District of Colorado, pursuant to 28 U.S.C. §1391(b)(2), because the unlawful employment practices complained thereof occurred in the State of Colorado.

## 3. STATEMENT OF CLAIMS AND DEFENSES

a.   Plaintiff Duran:

Defendant Schwab has multiple groups for providing different technical services for the corporation. In particular, Defendant Schwab has a group that is responsible for maintaining a mainframe and testing environment in which changes, modifications, and updates to Defendant Schwab's software and applications would be tested prior to implementation ("FTS Group"). The FTS Group is divided into two teams: the "Care Team" and the "Batch-Service Team." The "Care Team" handles software programmer/developer requests for test data. The "Batch-Service Team" is responsible for overseeing batch runs to test changes to software and/or applications.

On or about May 2, 2007, Plaintiff Duran began employment with Defendant Schwab in the "Quality Assurance Group" as a Grade 56 Software Engineer. From May 2007 to June 2010, Plaintiff Duran was employed in the "Quality Assurance Group" and received good performance evaluations from Defendant Schwab.

On or about June 1, 2010, Plaintiff Duran was promoted to a Grade 58 Senior Staff Software Applications Engineer in Defendant Schwab's FTS Group. From June 2010 to October 2011, Plaintiff Duran was employed in the "CARE Team" and received good performance

2

evaluations from Defendant Schwab.

Plaintiff Duran's mid-year 2011 Performance Evaluation did not show any negative or performance problem comments.

In mid-2011, there was a shift in Defendant Schwab's hiring practices. Defendant Schwab began to hire only young recent college graduates as software engineers; the hired employees were less qualified and/or less experienced than Plaintiff Duran.

On or about October 17, 2011, Plaintiff Duran was transferred to the "Batch-Service Team." Between October 2011 and April 2012, Plaintiff Duran was employed in the "Batch-Service Team" and received good performance evaluations from Defendant Schwab.

During Plaintiff Duran's employment on the "Batch-Service Team," from approximately October 2011 to June 2012, Plaintiff Duran's supervisor's words and actions towards Plaintiff Duran were abusive, hostile, and derogatory towards Plaintiff Duran's age. Plaintiff Duran's supervisor would frequently comment in front of others and in private on Plaintiff Duran's age. Plaintiff Duran's supervisor would make comments such as:

- Perform "like a man of your age and level of position."
- "A younger employee, such as Plaintiff Duran's teammate, would do a better job than Plaintiff Duran because he was younger".
- "Older people take longer to solve problems, like Plaintiff Duran".

Also, during this time, Plaintiff Duran was given a disproportionate amount of work to perform. This work required Plaintiff Duran to work between 9 and 12 hours each day to keep up with the work assigned to him. Plaintiff Duran was required to eat lunch at his desk almost every day in order to complete the work. During holidays, other employees were permitted to leave early while Plaintiff Duran was required to work late.

At the end of October 2011, Plaintiff Duran's disabled son (who does not drive and needs personal care assistance) became very ill and was hospitalized. In May 2012, Plaintiff Duran's son was diagnosed with cancer. Between October 2011 and May 2012, Plaintiff Duran's son was seeking medical treatment at least every two weeks for his illness. Defendant Schwab did not permit Plaintiff Duran to utilize his allocated vacation leave or personal days. Between October 2011 and April 2012, Plaintiff Duran was not permitted to use his vacation and/or personal days to care for his ill son, such as taking personal care of his son or attending medical appointments. Plaintiff Duran's full five weeks of vacation time were available at the time that Defendant Schwab terminated Plaintiff Duran's employment.

Defendant Schwab did not permit Plaintiff Duran to attend Defendant Schwab's organized functions.

The abusive, hostile, and derogatory treatment towards Plaintiff Duran continued for approximately six months, from October 2011 to April 2012. The number of comments and frequency of the comments about Plaintiff Duran's age caused Plaintiff Duran constant emotional and physical suffering. Specifically, Plaintiff Duran suffered daily from heightened stress, trouble with day to day life, trouble engaging with others in both work and personal settings, trouble sleeping, and numbness in his arms.

On or about October 30, 2011, Plaintiff Duran sent an e-mail to the Vice-President at Defendant Schwab, complaining that Plaintiff Duran's supervisor had been continually harassing and making derogatory comments about of his age.

In December 2011, Plaintiff Duran met the Manager of Human Resources at Defendant Schwab, and asked to be laterally transferred to another Team and/or Group because of the harassment and actions of Plaintiff Duran's supervisor. Plaintiff Duran even offered to

voluntarily be demoted to a Grade 56 Software Engineer (his previous level) if it would facilitate a transfer to another Team and/or Group. The Manager of Human Resources denied Plaintiff Duran's request.

Between December of 2011 and April of 2012, Plaintiff Duran's supervisor told Plaintiff Duran on several occasions that "he was trying not to hold a grudge against Plaintiff Duran for making trouble for him, but that it was hard."

On April 4, 2012, Plaintiff Duran's supervisor sent an e-mail to Plaintiff Duran (copying the supervisor's managers) stating that Plaintiff Duran was doing a good job. The e-mail also stated that Plaintiff Duran should not talk to his teammates.

On or about April 6, 2012, Plaintiff Duran again complained to the Manager of Human Resources that Plaintiff Duran's supervisor was harassing him because of his age and that Plaintiff Duran's supervisor was abusive and hostile for this reason. Plaintiff Duran further complained that Plaintiff Duran's supervisor was treating him differently than other younger employees under the supervisor's oversight.

Defendant Schwab failed to take any prompt or effective remedial action to stop the age-based harassment about which Plaintiff Duran complained.

On April 20, 2012, Plaintiff Duran's employment at Defendant Schwab was terminated.

1. Claim 1 Age Discrimination - 29 U.S.C. §§ 623(a):  Plaintiff Duran was subjected to discrimination in the terms and conditions of his employment because of his age in violation *inter alia* of 29 U.S.C. §§ 621-634 *et seq.*

2. Claim 2 Retaliation - 29 U.S.C. §§ 623(d):  Plaintiff Duran was subjected to retaliation for engaging in protected activities in violation *inter alia* of 29 U.S.C. §§ 621-634 *et seq.*

3. Claim 3 Violation of Colorado Anti-Discrimination Act C.R.S. § 24-34-402: Plaintiff Duran was subjected to discrimination in the terms and conditions of his employment because of his age in violation of C.R.S. § 24-34-401 *et seq.*

b. Defendant Schwab:

Defendant Schwab denies it discriminated or retaliated against Plaintiff in any manner whatsoever. Instead, any and all actions Defendant Schwab took with respect to Plaintiff's employment were taken for legitimate, non-discriminatory and non-retaliatory reasons. Plaintiff's own conduct led to his termination.

Schwab is a financial services firm engaged in providing securities brokerage and related financial services with locations throughout the United States, including multiple locations in Colorado. Schwab also provides banking services and products through its affiliate, Charles Schwab Bank. Schwab's clients include domestic and international individual investors, independent investment managers, institutions, broker-dealers and 401(k) sponsors. Schwab operates in a highly-regulated industry. The Company is subject to various federal and state securities and banking laws and regulations.

At all relevant times, Mr. Duran worked as a Grade 58 Senior Staff Software Applications Engineer in Schwab's FTS group, which is further divided into the CARE team and batch-services team. At all times, he was supervised by individuals over 57 years of age. Mr. Duran's group was responsible for maintaining a mainframe and distributed test environment in which changes, modifications, and updates to Schwab's software and applications would be tested prior to implementation.

From April 2010 until October 2011, Mr. Duran worked on the CARE team. He had a number of performance problems. For example, his productivity was lower than junior members

of his team and he could barely handle tasks which were easily mastered by entry-level employees. This led his supervisor to eventually conclude that he should be transferred to the batch-services team. She thought it might be a better fit for him because it involved fairly clear-cut tasks which did not require employees to formulate unique solutions to problems.

However, despite his transfer to the batch-services team, Mr. Duran's performance did not improve. Aside from taking an inordinate amount of time to complete his tasks, Mr. Duran's work product necessitated a significant amount of review, rework and revision.

In late October and early November, 2011, Mr. Duran made a series of modifications to Schwab's production server and maintenance processes without obtaining approval or documenting the changes. This led to server outages and forced Schwab to engage the vendor to resolve the problem. The vendor identified Mr. Duran as the source of the problem. Then, in April, 2012, Schwab experienced an abnormally large number of batch failures in its testing environment. Mr. Duran's supervisor discussed the problem in a meeting and asked members of both teams if they knew what might have caused the batch failures. Unbeknownst to his supervisor, Mr. Duran had stopped the data build, thereby causing the batches to have an insufficient quantity of data to run. Nonetheless, Mr. Duran did not disclose his conduct during the team meeting or otherwise admit to his supervisor that his decision to stop the data build had caused the batch run failures. However, Schwab investigated the cause of the batch failures and traced them to Mr. Duran. When confronted with evidence showing that he had caused the April 13 batch failures, Mr. Duran gave conflicting reasons as to why he did not own up to his mistake during the team meeting. Initially, he stated that he did not know he had made the mistake. In the next breath, however, Mr. Duran fully explained he did not disclose his error because he did not "want everyone to know he had made another mistake."

Based on his continued performance deficiencies, including the April batch failures, as well as his lack of candor in owning up to his mistake, Schwab terminated Mr. Duran on April 20, 2012. Mr. Duran utilized Schwab's appeals process to appeal his termination. Although Mr. Duran perceived his termination as unfair, he never raised any allegations of discrimination or retaliation to his employer.

## 4. UNDISPUTED FACTS

The following facts are undisputed:

1. Defendant Schwab is a financial services firm engaged in providing securities brokerage and related financial services.

2. The "Care Team" handles software programmer/developer requests for test data. The "Batch-Service Team" oversees batch runs to test changes to software and/or applications as part of its responsibilities.

3. On or about June 1, 2010, Plaintiff Duran was promoted to a Grade 58 Senior Staff Software Applications Engineer in Defendant Schwab's FTS Group.

4. From June 2010 to October 2011, Plaintiff Duran was employed in the "Care Team".

5. Between October 2011 and April 2012, Plaintiff Duran was employed in the "Batch-Service Team".

6. On or about April 20, 2012, Plaintiff Duran's employment with Defendant Schwab was terminated.

## 5. COMPUTATION OF DAMAGES

Plaintiff Duran's computation of damages depends on financial information from Defendant Schwab but will be calculated based on back pay, including expected salary increases,

lost benefits, and interest or appropriate inflation factor as applicable, front pay, liquidated damages and/or punitive damages, compensatory damages, including for pain and suffering.

    b.    Defendant Schwab seeks its costs expended in defense of this matter, including its attorney's fees, and any other relief that the Court deems appropriate.

## 6. REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED.R.CIV.P. 26(f)

a.    Date of Rule 26(f) meeting:

    Pursuant to Fed. R. Civ. R. 26(f) the parties held a telephonic conference on September 5, 2014, to consider the nature and basis of their claims and defenses, to make arrangements for their Rule 26(a)(1) disclosures, to discuss possible issues about preserving discoverable information, and to develop a discovery plan.

b.    Names of each participant and party he/she represented:

    Participating in the telephonic conference on September 5, 2014, was Mr. Ronnie Fischer, attorney for Plaintiff Duran, and Mr. Roger Trim, attorney for Defendant Schwab.

c.    Statement as to when Rule 26(a)(1) disclosures were made or will be made:

    Mandatory Rule 26(a)(1) disclosures were exchanged on September 19, 2014.

d.    Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1):

    The parties have no proposed changes in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1).

e.    Statement concerning any agreements to conduct informal discovery:

    Presently the parties do not have any agreements to conduct informal discovery.

f.  Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit numbering system.

>   The Parties agree to the use of a unified exhibit numbering system and presently have no other agreements or procedures to reduce discovery and other litigation costs.

g.  Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form.

>   The Parties agree to refer to electronic discovery as needed. Plaintiff and Defendant will preserve all relevant electronic communications in their possession, including all social media.

h.  Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case.

>   The Parties certify pursuant to Rule 26(f) of the Federal Rules of Civil Procedure that they have discussed the possibility of a prompt settlement or resolution of the case by alternative dispute resolution. The Parties believe that settlement is unlikely at this time but remains a possibility. However, additional discovery is needed before settlement can be accomplished.

## 7. CONSENT

All parties have not consented to the exercise of jurisdiction of a magistrate judge.

## 8. DISCOVERY LIMITATIONS

a.  Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules.

          **Depositions**:  Each party shall be allowed to take ten (10) depositions of fact witnesses in addition to the deposition of any experts.

          **Interrogatories**:  Each party shall be allowed to serve up to twenty-five (25) interrogatories on each other adverse party.

b.     Limitations which any party proposes on the length of depositions.

          No deposition shall exceed seven hours without the consent of all parties or an order of the Court.

c.     Limitations which any party proposes on the number of requests for production and/or requests for admission.

          **Production**:  Each party shall be allowed to serve up to twenty-five (25) requests for production on each other adverse party.

          **Admission**:  Each party shall be allowed to serve up to twenty-five (25) requests for admission on each other adverse party.

d.     Other Planning or Discovery Orders.

          None.

## 9. CASE PLAN AND SCHEDULE

a.     Deadline for Joinder of Parties and Amendment of Pleadings:

          November 14, 2014

b.     Discovery Cut-off:

          March 30, 2015

c.     Dispositive Motion Deadline:

          April 30, 2015

d.     Expert Witness Disclosure

1. The Parties shall identify anticipated fields of expert testimony, if any.

   Plaintiff Duran:

   a. An expert on retaliation in the work place, specifically how Plaintiff Duran suffered a materially adverse change in the terms and conditions of his employment following his complaint to management that Defendant Schwab engaged in age discrimination.

   b. An expert on damages to calculate amount owed Plaintiff Duran based on back pay, including expected salary increases, lost benefits, and interest or appropriate inflation factor as applicable, front pay, liquidated damages and/or punitive damages, compensatory damages including for pain and suffering.

   c. Any other expert whose testimony is needed for rebuttal of Defendant's experts.

   Defendant Schwab:

   a. Defendant Schwab may use an economic damages expert, vocational expert, and any other expert necessary to rebut Plaintiff's experts.

2. Limitations which the parties propose on the use or number of expert witnesses. The parties shall be governed by Fed. R. Civ. R. 26(a)(2) for the disclosure of expert witnesses and propose limiting the number of experts to three (3) per side.

3. The parties shall designate all experts and provide opposing counsel and any pro se parties with all information specified in Fed. R. Civ. P. 26(a)(2):

   On or before January 30, 2015.

4. The parties shall designate all rebuttal experts and provide opposing counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2):

On or before February 27, 2015.

e. Identification of Persons to Be Deposed:

Plaintiff Duran:

- Deloria Nelson, Employee Relations, Defendant Schwab, +3 hrs.
- Julie Ousley, Vice-President, Defendant Schwab, +3 hrs.
- Calvin Doucet, Managing Director, Defendant Schwab, +3 hrs.
- Carol Graham, Managing Director, Defendant Schwab, +3 hrs.
- John Schleigher, Senior Software Engineer, Defendant Schwab, +3 hrs.
- Don Catey, Senior Software Engineer, Defendant Schwab, +3 hrs.
- Kurt Knopp, Senior Software Engineer, Defendant Schwab, +3 hrs.
- Chad Benn, Senior Software Engineer, Defendant Schwab, +3 hrs.
- Carol Goetz, Quality Assurance Manager, Defendant Schwab, +3 hrs.
- Any witness(es) identified by Defendant Schwab in support of its Defense, unknown hrs.
- Any expert(s) identified by Defendant Schwab, unknown hrs.

Defendant Schwab:

- David Duran, Plaintiff, 7 hrs.
- Witnesses Disclosed by Plaintiff in Support of his Claims, 7 hrs. each
- Any expert(s) that may be retained by Plaintiff, 7 hrs. each

f. Deadline for Interrogatories:

All interrogatories shall be served no later than February 25, 2015, or 33 days prior to discovery cut-off, whichever is later.

g. Deadline for Requests for Production of Documents and/or Admissions:

        All requests for production of documents and requests for admissions shall be served no later than February 25, 2015, or 33 days prior to discovery cut-off, whichever is later.

## 10. DATES FOR FURTHER CONFERENCES

a.    Status conferences will be held in this case at the following dates and times: _____.

b.    A final pretrial conference will be held in this case on _____ at ___ o'clock __ m. A Final Pretrial Order shall be prepared by the parties and submitted to the court no later than seven (7) days before the final pretrial conference.

## 11. OTHER SCHEDULING MATTERS

a.    Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement.

    The parties can identify none.

b.    Anticipated length of trial and whether trial is to the court or jury.

    The parties anticipate a trial to a jury lasting between five (5) and seven (7) days.

c.    Identify pretrial proceedings, if any, that the parties believe may be more efficiently or economically conducted in the District Court's facilities at 212 N. Wahsatch Street, Colorado Springs, Colorado; Wayne Aspinall U.S. Courthouse/Federal Building, 402 Rood Avenue, Grand Junction, Colorado; or the U.S. Courthouse/Federal Building, 103 Sheppard Drive, Durango, Colorado.

    The parties can identify none.

## 12. NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1D. by submitting proof that a copy of the motion has been served upon the moving attorney's client, all attorneys of record, and all *pro se* parties.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1A.

In addition to filing an appropriate notice with the clerk's office, a *pro se* party must file a copy of a notice of change of his or her address or telephone number with the clerk of the magistrate judge assigned to this case.

In addition to filing an appropriate notice with the clerk's office, counsel must file a copy of any motion for withdrawal, motion for substitution of counsel, or notice of change of counsel's address or telephone number with the clerk of the magistrate judge assigned to this case.

## 13. AMENDMENTS TO SCHEDULING ORDER

This Scheduling Order may be altered or amended only upon a showing of good cause.

DATED at Denver, Colorado, this ____ day of October, 2014.

BY THE COURT:

_____
United States Magistrate Judge

APPROVED:

| FISCHER LAW FIRM, P.C. | OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C. |
|---|---|
| */s/ Ronnie Fischer* | */s/ Roger G. Trim* |
| Mr. Ronnie Fischer, Esq<br>1777 South Harrison Street<br>Penthouse - Suite 1500<br>Denver, CO  80210<br>Telephone:  303-756-2500<br>Fax:  303-756-2506<br>Email:  Ronnie@FischerEsq.com<br><br>Attorney for Plaintiff | David D. Powell, Jr.<br>Roger G. Trim<br>Dawn M. Amos<br>1700 Lincoln Street, Suite 4650<br>Denver, CO  80203<br>Telephone: 303-764-6800<br>Fax: 303-831-9246<br>Email:  david.powell@ogletreedeakins.com<br>          roger.trim@ogletreedeakins.com<br>          dawn.amos@ogletreedeakins.com<br><br>Attorneys for Defendant |